IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

STEVEN J FRATO JR
22 LILAC LANE
BARNEGAT, NJ 08005
845-545-6399
fratosteven@gmail.com

Plaintiff, *Pro Se*

| | |
|---|---|
| STEVEN J. FRATO JR, <br><br> Plaintiff, <br><br> vs. <br><br> CAPITAL MANAGEMENT SERVICES L.P., <br> A Delaware Corporation, <br><br> Defendant | Docket No. 3:23-cv-04049-MAS-JBD |

## FIRST AMENDED COMPLAINT

Plaintiff STEVEN J FRATO JR (hereinafter, "Plaintiff"), a New Jersey resident, brings this Complaint, against Defendant CAPITAL MANAGEMENT SERVICES, LP (hereinafter "Defendant"), based upon information and belief of Plaintiff, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## INTRODUCTION/PRELIMINARY STATEMENT

1. The Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et. seq.* is a federal law enacted in 1991 in the United States to address concerns related to unwanted telemarketing calls and protect consumer privacy. The TCPA restricts certain types of telephone solicitations,

1

including auto-dialed calls, pre-recorded voice messages, text messages, and fax messages. It also establishes guidelines for obtaining prior express consent from consumers and provides consumers with the right to sue for unlawful communications.

2. One of the notable provisions of the TCPA is its grant of a private right of action to consumers who receive unlawful communications in violation of the law's provisions. Section 227(b)(3) of the TCPA allows individuals to file lawsuits and seek damages for each violation, with statutory damages ranging from $500 to $1,500 per violation, depending on the willfulness of the violation. This provision empowers consumers to take legal action against entities that engage in prohibited practices, such as making unsolicited telemarketing calls or sending unsolicited text messages and provides a deterrent effect against non-compliance.

3. Since July 2003, consumers who do not want to receive unsolicited telemarketing calls to their residential landlines and wireless lines can register their numbers on the DNC Registry, which is a national database administered by the Federal Trade Commission (FTC). Companies engaged in telemarketing must have procedures in place to avoid calling numbers on the DNC Registry. Once a number is registered on the DNC Registry, businesses have 31 days to update their records 47 C.F.R. § 64.1200(c)(2)(i)(D)).

4. Under the TCPA, a company cannot call consumers who have contacted it and requested not to receive telemarketing calls made by or on behalf of that company. In fact, the TCPA prohibits companies from making calls (or having others make calls on their behalf) for telemarketing purposes unless and until they have instituted adequate procedures to maintain an internal DNC list. Those procedures must meet the FCC's minimum standards, which include a written policy. Companies engaged in telemarketing must have a written policy, available on demand, for maintaining a DNC list.

2

## PARTIES

5.     Upon information and belief, Defendant is a company that uses the mail, telephone, or facsimile in a business the principal purpose of which is the collection of debts, or that regularly collects or attempts to collect debts alleged to be due another.

6.     Upon information and belief, Capital Management Services L.P. is a Limited Partnership existing under the Laws of the State of Delaware with its principal office located at 698 ½ South Ogden Street, Buffalo, New York 14206 while also doing business within this judicial district that is engaged in the business of collecting debts from consumers in the State of New Jersey.

7.     Defendant's registered agent from the service of process in New Jersey is Corporation Service Company located at 100 Charles Ewing Blvd, Ewing, NJ 08628, Suite 160.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the case arises under the laws of the United States, presenting a federal question. Plaintiff's claims for relief are predicated upon the TCPA, 47 U.S.C. § 227 *et. seq.*, a federal statutory law, therefore, this action presents a federal question within this Court's jurisdiction.

9.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district. Plaintiff is a resident of this district. The Defendant intentionally contacts residents of this district to conduct business, thereby establishing substantial ties to the district. Therefore, this district is the appropriate

venue for the actions alleged in this complaint. The offending phone calls were also received by Plaintiff within this district.

The Growing Problem Of Automated Telemarketing

10. As the Supreme Court explained at the end of its term in 2019, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index, YouMail (Aug. 6, 2019, 9:00 AM),

https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. Consumer Complaint Data Center, FCC, www.fcc.gov/consumer-help-center-data

**LEGAL CLAIMS**

13. Plaintiff maintains a personal cell phone number ending in 6399 for about 10 years and has never used this number for business purposes

4

14. Plaintiff's personal cell phone number has been listed on the national Do Not Call Registry as of February 04, 2023.

15. Plaintiff never provided his consent to be contacted via his personal cell phone to Capital Management Services L.P., nor did he engage in any business relationship that would justify these calls.

16. Defendant repeatedly refused to identify itself as a debt collector when Plaintiff inquired about the purpose of the calls, instead vaguely stating that they were for a "personal business matter." This deceptive practice deprived Plaintiff of the ability to assert his rights under the Fair Debt Collection Practices Act (FDCPA) and instead subjected him to continued calls under the guise of an unidentified business solicitation. By failing to clearly identify itself as a debt collector, Defendant's calls fall within the scope of telemarketing under the TCPA, making them subject to Do Not Call protections. A reasonable inquiry into Defendant's history reveals that other consumers have alleged similar violations in legal actions, suggesting a pattern of noncompliance.

17. Defendant's business model is predicated on violation of the TCPA as evidenced by their litigation history, in which multiple consumers have sued over the Defendant's blatant disregard of the TCPA. [1]

18. On several occasions when the Plaintiff answered the Defendants' calls, the Defendant asked to speak to a party who is not the Plaintiff. Even after the Plaintiff explained multiple times he is not the person whom they are attempting to reach, the Defendant continued to call.

---

[1] Nguyen v. Capital Management Services, L.P., 3:16-cv-02366, (S.D. Cal.), McKenna v. Capital Management Services, L.P., 3:17-cv-00305, (S.D. Cal.)

19. The Plaintiff asked not to be called again since he was not the individual with the alleged debt, however, still received phone calls and scripted voicemails of an impersonal nature.

20. When the Plaintiff attempted to ask what the call was for the Defendant on multiple occasions stated, "It is a personal business matter.", reflecting the commercial nature of the calls placed to the Plaintiff.

21. Upon reviewing public facing website [https://cms-collect.com/about/], Plaintiff ascertained Capital Management Services L.P. was a debt collector, a detail they have failed to communicate even when asked by Plaintiff. Two pieces of written correspondence were sent to Defendant by certified mail, return receipt requested, wherein plaintiff disputed the alleged debt in its entirety. To this day the Defendant has not responded. This failure to provide debt validation constitutes a violation of 15 U.S.C. §1692g(b), which requires a debt collector to cease collection activity until verification of the debt is provided.

22. Plaintiff received at least twenty-nine calls from Defendant between May 12, 2023, and July 27, 2023, despite not providing prior express consent. These calls originated from various phone numbers, indicating an attempt to evade call blocking or detection. The pattern of calls suggests that Defendant utilized an Automated Telephone Dialing System (ATDS), as defined under 47 U.S.C. § 227(b)(1)(A)(iii).

23. The frequency and intervals of the calls further support this assertion. Calls were placed at consistent intervals, often spaced by a few days, with notable clusters of activity, such as calls occurring every two to four days in June and July 2023, indicating the use of an automated system dialing in a queue rather than manual human input. Additionally, multiple calls originated from different but similar phone numbers, such as 845-751-6483, 845-751-6571, 845-751-7192,

and 845-751-7224, demonstrating number rotation, a known tactic of autodialers to bypass spam detection. The pattern further suggests an escalation in dialing intensity, with calls occurring on consecutive days on July 5 and July 6, and multiple times per week in mid-July. The callback number for many of these calls was 1-800-504-2401, establishing that the calls were linked to the same entity despite originating from different spoofed numbers.

24. The pattern of calls also indicates that Defendant used a dialing system designed to repeatedly attempt calls over an extended period rather than relying on human input for each call. The increased frequency of calls in June and July 2023, with calls occurring nearly every other day, suggests an algorithm-driven escalation, which is a known behavior of auto dialers used in debt collection or telemarketing.

25. Defendant's repeated use of different numbers with similar area codes, such as 845-751-XXXX, demonstrates a predictable pattern that is unlikely to occur in manually dialed calls. Certain phone numbers, including 845-751-6483, 845-751-6571, 845-751-7192, and 845-751-7224, were used multiple times to contact Plaintiff. Defendant's use of multiple similar phone numbers, in a predictable pattern of sequential calls, suggests that its dialing system had the capacity to store and dial numbers using a sequential number generator. An ATDS under *Facebook, Inc. v. Duguid, 592 U.S. 395 (2021)* is defined by its capacity to store or produce numbers using a random or sequential number generator. The frequency, persistence, and rotation of numbers demonstrate an automated process rather than human-dialed calls, which aligns with the Court's interpretation of prohibited autodialer use under the TCPA.

26. Based on the number, frequency, and rotation of phone numbers used, as well as the absence of voicemails and increased dialing persistence over time, there is a plausible basis to allege that Defendant employed an ATDS in violation of 47 U.S.C. § 227(b)(1)(A)(iii). These calls were made without Plaintiff's consent and in a manner that matches known ATDS usage

7

patterns and can be proven through discovery. Defendant's repeated and large scale violations constitute a knowing and willful violation warranting treble statutory damages.

27. The foregoing table [Table 1] shows all of the calls made to the Plaintiff from the Defendant including a callback number if provided along with name of the caller if a voicemail was left.

**Table 1:**

| Date | # Called From | Callback # | Name of Caller |
|---|---|---|---|
| 5/12/23 | 8457516357 | 18005042401 | Joe Estrada |
| 5/25/23 | 8457516483 | 18005042401 | Cindy Bannister |
| 6/1/23 | 8457516495 | 18005042401 | Carrie Sabin |
| 6/5/23 | 8455456399 | 18005042401 | Erica Calhoun |
| 6/9/23 | 8457516463 | No Voicemail Received | No Voicemail Received |
| 6/12/23 | 8457516463 | No Voicemail Received | No Voicemail Received |
| 6/14/23 | 8457516571 | No Voicemail Received | No Voicemail Received |
| 6/16/23 | 8457516483 | 18005042401 | Carrie Sabin |
| 6/19/23 | 8457516483 | No Voicemail Received | No Voicemail Received |
| 6/20/23 | 8457516571 | No Voicemail Received | No Voicemail Received |
| 6/21/23 | 8457518315 | No Voicemail Received | No Voicemail Received |
| 6/26/23 | 8457516571 | No Voicemail Received | No Voicemail Received |
| 6/27/23 | 8456048315 | No Voicemail Received | No Voicemail Received |

| Date | Number | Voicemail | Name |
|---|---|---|---|
| 6/28/23 | 8457516483 | 18005042401 | Frederick Bruce |
| 6/30/23 | 8456048315 | No Voicemail Received | No Voicemail Received |
| 7/3/23 | 8456048315 | No Voicemail Received | No Voicemail Received |
| 7/5/23 | 8457517224 | No Voicemail Received | No Voicemail Received |
| 7/5/23 | 8457517224 | No Voicemail Received | No Voicemail Received |
| 7/6/23 | 8457517161 | No Voicemail Received | No Voicemail Received |
| 7/10/23 | 8457517192 | No Voicemail Received | No Voicemail Received |
| 7/12/23 | 8457517192 | No Voicemail Received | No Voicemail Received |
| 7/13/23 | 8457517192 | No Voicemail Received | No Voicemail Received |
| 7/17/23 | 8457517224 | No Voicemail Received | No Voicemail Received |
| 7/19/23 | 8457517192 | No Voicemail Received | No Voicemail Received |
| 7/20/23 | 8457517224 | No Voicemail Received | No Voicemail Received |
| 7/24/23 | 8457517161 | No Voicemail Received | No Voicemail Received |
| 7/26/23 | 8457517412 | No Voicemail Received | No Voicemail Received |
| 7/27/23 | 8457517349 | No Voicemail Received | No Voicemail Received |

**COUNT I**

**KNOWING AND WILLFUL VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §227 *et. seq.*)**

28. Plaintiff incorporates by reference, repeats and realleges each and every prior paragraph of this Complaint as if fully set forth herein.

29. The violations in this Count are applicable to each and every telephone call described within "Table 1" which lists the calls received by Plaintiff from Defendants.

30. Defendants placed at least twenty-nine unsolicited telemarketing calls to Plaintiff's cellular telephone number using an ATDS in violation of 47 U.S.C. § 227(b)(1)(A).

31. "Defendant utilized an automated telephone dialing system (ATDS) that produces and dials numbers sequentially, rather than manual dialing. The evidence of this includes:

- A notable delay followed by a clicking noise before a representative spoke.

- The use of multiple different phone numbers to contact Plaintiff, reflecting a dialing pattern characteristic of auto-dialed calls.

- Calls being made in rapid succession from numbers with similar patterns, indicating sequential dialing.

- A consistent delay upon answering, with a clicking noise and/or beep before a live representative spoke.

32. Defendant willfully engaged in fraudulent spoofing of telephone numbers, which when called back, did not ring.

33. Defendant's repeated calls persisted despite Plaintiff notifying them on multiple occasions that he was not the intended recipient of "the personal business matter" and requesting that they stop calling. Defendant knowingly ignored these requests, demonstrating reckless disregard for the TCPA's provisions.

34. Defendant knowingly failed to identify itself in its calls and instead misleadingly stated that the calls were for a "personal business matter," a term that inherently implies engagement in commerce, as "business" is defined as the practice of making one's living by engaging in commerce. By using this phrase instead of identifying itself as a debt collector, Defendant suggested that the calls were solicitations or telemarketing rather than a bona fide attempt to collect a debt. The deliberate omission of its debt collection status aligns the nature of these

10

calls with telephone solicitations, which are subject to the TCPA's restrictions. Expecting the Plaintiff to rely on this fraudulent misrepresentation to Plaintiff's detriment, Defendant's evasive conduct further supports the assertion that it sought to avoid TCPA liability while engaging in prohibited conduct.

35. Whether the contents of the calls constitute a telephone solicitation is a factual issue which is to be borne out in discovery and can not be dismissed in the pleading stage based on the content of their calls.

36. This amounts to twenty-nine violations using an ATDS to call a number for which the called party is charged for the call. 47 U.S.C. § 227(b)(1)(A)(iii).

37. The TCPA and its implementing regulations distinguish between debt collection calls made with consent and those made without prior express permission. Under 47 C.F.R. § 64.1200(f)(14), a "telephone solicitation" is defined as a call made for the purpose of encouraging the purchase or rental of property, goods, or services. However, a debt collection call is only exempt from this classification if the consumer has provided prior express consent.

38. Plaintiff never provided express consent—written or otherwise—to Defendant or any affiliated party to receive calls regarding any debt or financial obligation.

39. Defendant initiated calls to Plaintiff without prior consent, and because Plaintiff had no existing business relationship with Defendant and did not owe a debt to Defendant, the calls constitute telephone solicitations under the TCPA. Defendant further characterized the calls as a "personal business matter" rather than debt collection, making their solicitations subject to the TCPA's Do Not Call provisions. As such, Defendant's calls violated 47 C.F.R. § 64.1200(c)(2). Because Defendant lacked consent to make these calls, it was required to:

11

- Scrub its call list against the National Do Not Call Registry;

- Honor Plaintiff's explicit request to stop calling.

Defendant failed to do both, further demonstrating its knowing and willful violation of the TCPA.

40. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least twenty-nine violations of the TCPA, 47 U.S.C. § 227(b), by making calls, except for emergency purposes, to the residential telephone line of Plaintiff using an ATDS to a number for which the called party is charged for the calls. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

**COUNT II**
**VIOLATION OF THE TCPA'S IMPLEMENTING REGULATIONS CODIFIED AT 47 C.F.R. § 64.1200 *et. seq.***

41. Plaintiff incorporates by reference, repeats and realleges each and every prior paragraph of this Complaint as if fully set forth herein.

By placing at least twenty-nine telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, Defendant violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c)(2). This is further evidenced by Defendant's continued calls even after Plaintiff explicitly requested that the calls stop.

42. Defendant's failure to properly identify the nature of the calls, combined with its use of multiple different numbers to contact Plaintiff, further supports the assertion that Defendant

12

engaged in deceptive and unlawful telemarketing practices along with unlawfully debt collection practices under the FDCPA.

43. This amounts to twenty-nine violations for calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2).

44. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least twenty-nine violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, inter alia by calling someone on the National Do-Not-Call registry.

45. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

## COUNT III
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §1692 et seq.)

46. Plaintiff incorporates by reference, repeats, and realleges each and every prior paragraph of this Complaint as if fully set forth herein.

47. Defendant violated 15 U.S.C. §1692(e)(11) by failing to disclose that they were a debt collector in their communications with Plaintiff, instead misleadingly referring to the calls as relating to a "personal business matter."

48. Defendant's refusal to disclose its identity and purpose of the call created confusion, distress, and prevented Plaintiff from asserting his rights under both the FDCPA and TCPA.

49. Defendant continued to place calls to Plaintiff despite Plaintiff repeatedly stating that he was not the intended recipient and requesting the calls cease, violating 15 U.S.C. §1692(c)(a). These calls were made in connection with an attempt to collect an alleged debt, thereby

13

subjecting Defendant to the FDCPA's requirements. Defendant's continued calls, despite Plaintiff's clear statements disputing the debt and requesting cessation of contact, constitute harassment and abusive conduct as prohibited under 15 U.S.C. §1692d. which prohibits further contact after an alleged debtor has requested cessation of communication.

50. Defendant's violations of the FDCPA warrant statutory damages as allowed under 15 U.S.C. §1692k(a)(2)(A), as well as any actual damages suffered by Plaintiff. Additionally, Defendant violated 15 U.S.C. §1692g(b) by failing to respond to Plaintiff's written debt validation request sent via certified mail on July 7, 2023. As a result, Defendant was required to cease all collection activities until verification of the debt was provided, yet it failed to do so, further violating Plaintiff's rights under the FDCPA.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendants for:

A. Knowing and willful violations of the TCPA's restrictions in 47 U.S.C. § 227(b), in the amount of $1500 per violation

B. Because of Defendants' knowing and willful violations of the TCPA's implementing regulations, in the amount of $1500 in damages for each violation under 47 U.S.C. § 227(c)(5).

C. Twenty-nine knowing and willful violations under the TCPA implementing regulations at $1500 each, amounting to $43,500 in statutory damages. As well as twenty-nine

14

       knowing and willful violations under TCPA statute at $1500 each, amounting to $43,500 in statutory damages, totaling $87,000.

D.      Damages for violations under the regulations of the FDCPA of $1,000.

E.      Pre and Post-judgment Interest on the above amounts from July 2023 to present.

F.      Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## FED. R. CIV. P. 11 CERTIFICATION

I certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no other action or arbitration proceeding is contemplated. Furthermore, there are no other known necessary parties, other than any presently unknown defendants, designated herein as fictitious defendants.

## FED. R. CIV. P. 5.2(A) CERTIFICATION

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Fed. R. Civ. P. 5.2(a).

_____
Steven J Frato Jr

February, 10, 2025

15