**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

STEVEN J FRATO JR

22 LILAC LANE

BARNEGAT, NJ 08005

845-545-6399

fratosteven@gmail.com

Plaintiff, *Pro Se*

STEVEN J. FRATO JR,

Plaintiff,

vs.

CAPITAL MANAGEMENT SERVICES L.P.,
A DELAWARE CORPORATION,

Defendant

Docket No: 3:23-cv-04049-MAS-JBD

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## INTRODUCTION

Plaintiff Steven J. Frato Jr. ("Plaintiff") respectfully submits this opposition to the motion to dismiss filed by Defendant Capital Management Services, L.P. ("Defendant") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant seeks dismissal of the Amended Complaint by mischaracterizing both the law and the detailed factual allegations, hoping to insulate itself from liability under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

Defendant wants to have its cake and eat it too—masking the true nature of its calls with vague language like "personal business matter," (See Am. Compl., ECF No. 16 ¶ 16.) refusing to identify itself as a debt collector, and then hiding behind the statutory exemption for bona fide debt collection. But it cannot claim the protections of a law it deliberately chose not to comply with. The TCPA does not reward evasion, and courts look to the *content and context* of the communication, not self-serving post-hoc labels.

Plaintiff's Amended Complaint contains detailed, specific facts about a concentrated campaign of harassing, unsolicited phone calls placed by Defendant to Plaintiff's personal cell phone using technology consistent with an Automated Telephone Dialing System ("ATDS"), all without prior express consent. These calls were not lawful debt collection efforts. They were commercial outreach disguised to evade TCPA scrutiny, delivered in a scripted, impersonal fashion, and without the basic statutory disclosures required under the FDCPA. When Plaintiff informed Defendant that they had the wrong person, the calls did not stop—they escalated. When Plaintiff demanded validation of the alleged debt, Defendant fell silent. This is not legitimate debt collection; it is deliberate noncompliance.

Each of Defendant's arguments fall short under the weight of well-pleaded allegations and the liberal pleading standard applicable at this stage. Defendant seeks a free pass before discovery has even begun. That request should be denied in its entirety.

## <u>LEGAL STANDARD</u>

1. A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. To survive such a motion, a complaint must contain

factual allegations that, accepted as true and viewed in the light most favorable to the plaintiff, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "is not akin to a probability requirement," but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

2. Courts are required to construe pro se complaints liberally and to hold them to a less stringent standard than formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Even if a pro se plaintiff's legal theory is not clearly articulated, a well-pled complaint should not be dismissed if it raises a reasonable inference that the defendant is liable under any legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

3. At the pleading stage, plaintiffs are not required to provide direct evidence or plead the internal mechanics of a defendant's conduct. For claims under the Telephone Consumer Protection Act (TCPA**)**, courts routinely allow allegations of automated or scripted calls to proceed where plaintiffs describe repeated contacts from rotating numbers, consistent patterns of call timing, or other circumstantial indicators of autodialing. See, e.g., *Gaker v. Citizens Disability, LLC*, 2021 WL 4097052, at *4 (D.N.J. Sept. 8, 2021)* ("Whether the dialing system actually has the requisite capacity is a factual matter not suitable for resolution on a motion to dismiss."). A plaintiff may plead sufficient facts to support a

TCPA claim without naming the precise technology used. See *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 602 (E.D. Pa. 2021).

4. Likewise, the Fair Debt Collection Practices Act (FDCPA) is a remedial statute and should be construed broadly in favor of consumers. Courts have consistently held that factual allegations about deceptive, harassing, or unlawful collection conduct must be accepted as true at this stage, even if the defendant contests them. See *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 669 (S.D.N.Y. 2006) (failure to provide proper Mini-Miranda disclosure constitutes a violation of § 1692e(11)); *Valle v. First Nat'l Collection Bureau, Inc.*, 252 F. Supp. 3d 1332, 1336 (S.D. Fla. 2017).

5. Finally, in determining whether a communication falls under the TCPA's definition of "telephone solicitation" or whether a debt collection exemption applies, courts must evaluate the content and context of the communication—not the label the caller uses to describe it. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) ("A call aimed at promoting services or furthering sales objectives qualifies as a solicitation."); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 645 (N.D. W. Va. 2016).

6. Accordingly, when a plaintiff pleads specific and non-conclusory facts showing repeated unwanted contacts, failure to cease communication after opt-out requests, or refusal to comply with disclosure and verification rules, courts have overwhelmingly allowed those claims to proceed to discovery. Plaintiff's claims here are not hypothetical—they are grounded in clear factual allegations that meet and exceed the plausibility threshold. Dismissal is therefore inappropriate at this early stage.

# ARGUMENT

## POINT I

## DEFENDANT MISAPPLIES *FACEBOOK V. DUGUID* AND IGNORES WELL-PLED FACTS SUPPORTING THE USE OF AN AUTOMATED TELEPHONE DIALING SYSTEM.

7. Defendant argues that Plaintiff's allegations regarding the use of an ATDS are conclusory and fail to meet the standard articulated in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021). This misstates both the applicable standard and the factual content of Plaintiff's Amended Complaint.

8. In *Duguid*, the Supreme Court clarified that an ATDS under the TCPA must have the capacity to store or produce telephone numbers using a random or sequential number generator and to dial those numbers. While the Court rejected an interpretation that would encompass all devices capable of storing and dialing numbers, it did not impose a heightened pleading requirement. Courts interpreting *Duguid* have held that a plaintiff need not allege the internal mechanics of the dialing system to survive dismissal. Rather, it is sufficient to plead facts giving rise to a plausible inference that the dialing system used had the requisite capacity. See *Gaker v. Citizens Disability, LLC*, 2021 WL 4097052, at *4 (D.N.J. Sept. 8, 2021).

9. The Plaintiff has pled precisely the kind of specific, circumstantial facts courts have deemed sufficient post-*Duguid*. These include a documented pattern of twenty-nine calls placed over a concentrated two-month period; use of multiple rotating numbers with a shared prefix (845-751-XXXX) (See Am. Compl., ECF No. 16 ¶ 25.), indicative of a

system configured to dial from pre-loaded number batches; and calls placed on consecutive business days and in some cases multiple times a day, without regard to whether the Plaintiff had responded or requested that the calls cease. Many of these calls resulted in no voicemail, or in voicemails containing identical impersonal scripts—a hallmark of abandoned or algorithmically queued calls using autodialing technology (See Am. Compl., ECF No. 16 Table 1.). These details go far beyond conclusory statements and provide concrete indicators of a dialing system that stores and dials numbers sequentially and without human intervention.

10. Moreover, courts have consistently recognized that similar allegations support a plausible inference of ATDS use. In *Todd v. Citibank*, 2017 WL 1502796, at *6 (D.N.J. Apr. 26, 2017), the court found that repeated regular calls from different numbers over a sustained period, particularly where the content or circumstances of the calls indicate automation, supported the inference of ATDS usage. Likewise, in *Leon v. Target Corp.*, No. 15-01, 2015 WL 1275918, at *2–3 (M.D. Pa. Mar. 19, 2015), the court credited allegations of sequential dialing and repeated misdirected calls as sufficient to suggest the use of an auto dialer. Plaintiff's experience mirrors these circumstances: he was repeatedly called by the Defendant after stating that he was not the intended recipient (See Am. Compl., ECF No. 16 ¶ 33.), suggesting indiscriminate and automated dialing.

11. Plaintiff also alleges that several of the voicemails left by Defendant were scripted and identical in tone and content, despite being delivered by different callers. This strongly supports the inference that Defendant employed a centralized and automated messaging system to leave prerecorded-like voicemails. Courts have held that such uniform, impersonal messages—though delivered by a live voice—can functionally equate to

prerecorded messages when used in mass campaigns in violation of 47 U.S.C. § 227(b)(1)(B). See *Bakov v. Consolidated World Travel, Inc.*, 2019 WL (N.D. Ill. Dec. 9, 2019).

12. Accordingly, Plaintiff's allegations are entirely consistent with the holding in *Duguid* and, when accepted as true and viewed in the light most favorable to Plaintiff, are sufficient to state a claim under 47 U.S.C. § 227(b)(1)(A)(iii) and that the dialing system used by Defendant plausibly had the capacity to generate and store numbers using a random or sequential number generator.

13. As alleged in the Complaint (See Am. Compl., ECF No. 16 ¶ 19.), Plaintiff received scripted voicemails of an impersonal nature, despite having asked Defendant not to call again. The repeated delivery of identical voicemail content by different representatives supports the inference that Defendant was using a standardized and centralized messaging system, consistent with the type of automated communication governed by 47 U.S.C. § 227(b)(1)(B). Courts have recognized that the TCPA's protections extend to communications that, although voiced by a live agent, are uniform, impersonal, and functionally indistinguishable from a prerecorded message, particularly when used repeatedly across a large-scale calling campaign.

14. Taken together, Plaintiff's factual allegations—timing, frequency, number rotation, abandoned calls, and repeated scripting (See Am. Compl., ECF No. 16 ¶ 22-26, 31.) — support a strong inference that Defendant used a system with the capacity to store or produce numbers using a random or sequential number generator and to dial those numbers, consistent with the standard set forth in *Duguid*. Defendant's argument seeks to improperly elevate the pleading burden by demanding that Plaintiff allege technical

details unavailable at this stage and disregards the substantial factual content already pled. Plaintiff has satisfied the Rule 8(a) pleading standard, and this claim should proceed to discovery.

## POINT II

## DEFENDANT'S CONCEALMENT OF THE MATERIAL FACT OF THEIR STATUS AS A DEBT COLLECTOR TRANSFORMS THE CALLS INTO SOLICITATIONS UNDER THE TCPA WHICH ARE NOT WITHIN THE TCPA'S DEBT COLLECTION EXEMPTION.

15. The Defendant argues that the calls at issue are exempt from the TCPA's provisions because they were made for the purpose of collecting a debt. However, the Defendant did not identify itself as a debt collector in any of its 29 calls. When Plaintiff directly inquired whether the calls were from a debt collector, Defendant deflected, stating vaguely that the calls were about a "personal business matter." At no point did Defendant provide a Mini-Miranda warning or otherwise disclose that it was acting in a debt collection capacity as required by 15 U.S.C. § 1692e(11).

16. A communication that purports to collect a debt but fails to identify itself as such or validate the debt when requested, is not entitled to the TCPA's debt collection exemption. Instead, such communications are rightly assessed based on their content and context. See *Mey v. Got Warranty, Inc., 193 F. Supp.* 3d 641, 645 (N.D. W. Va. 2016). Courts have held that when a caller fails to disclose their purpose or identity, and the consumer lacks a preexisting account or business relationship (See Am. Compl., ECF No. 16 ¶ 15, 38.), the call may reasonably be treated as a solicitation under 47 C.F.R. § 64.1200(f)(14). That is

precisely the scenario here. Plaintiff had no prior relationship with the Defendant, did not owe a debt, and only discovered the identity of the caller through his own independent investigation—after reviewing callback numbers and reverse searching the associated names.

17. Critically, even after Plaintiff explicitly informed Defendant that they had reached the wrong person, Defendant continued calling. Not once did Defendant acknowledge that it had misidentified the intended recipient, nor did it provide any identifying information about itself or the nature of the alleged debt. Defendant's refusal to correct its error, combined with its failure to identify itself, removes any plausible inference that these were bona fide collection efforts. Under 15 U.S.C. § 1692c(b), a debt collector is prohibited from communicating with third parties regarding a debt without consent or court authorization. Yet Defendant persisted in contacting Plaintiff—who had clearly denied being the individual they are attempting to reach for their "personal business matter"—thereby violating the FDCPA and forfeiting any exemption under the TCPA.

18. Defendant's strategic refusal to clarify the nature of the calls supports the inference that these calls were designed to appear innocuous, while functioning as commercial outreach. In *Shelton v. Nat'l Gas & Elec., LLC,* No. 17-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019), the court held that calls could constitute solicitations under the TCPA where the caller withheld their identity and the true purpose of the communication. Similarly, here Defendant deliberately evaded disclosure, and as a result, Plaintiff was misled into believing the calls were generic commercial outreach rather than lawful debt collection

19. The term “business” is commonly understood to mean “the practice of making one’s living by engaging in commerce.” When a caller insists the subject of a call is a “personal business matter,” but offers no further detail, and the recipient has no known business relationship with the caller, it is reasonable to interpret that communication as an effort to engage the consumer in a commercial transaction. This language, paired with Defendant’s refusal to validate any debt, supports the conclusion that the calls were intended to solicit consumer engagement under the guise of a vague business interaction—thereby fitting the definition of a “telephone solicitation” under 47 C.F.R. § 64.1200(f)(14).

20. Courts have emphasized that the TCPA’s purpose is to prevent exactly this kind of consumer deception—wherein vague or ambiguous messaging is used to initiate commercial relationships. In *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012), the Ninth Circuit rejected the defendant’s argument that an ambiguous call was non-solicitative, holding instead that “a call aimed at promoting services or furthering sales objectives qualifies as a solicitation.” Defendant’s communications, cloaked in vague phrases like “personal business matter,” are consistent with the type of evasive and deceptive calls targeted by the TCPA.

21. The failure to validate the alleged debt after Plaintiff’s formal written dispute further undermines Defendant’s attempt to frame the calls as bona fide debt collection. Plaintiff submitted a certified letter on July 29, 2023, requesting verification of the debt. Defendant never responded. This omission constitutes a violation of 15 U.S.C. § 1692g(b).

22. The District of New Jersey and other courts have made clear that such conduct—refusing to cease contact after multiple opt-out requests, while also failing to provide clarity or

transparency—supports liability under both the TCPA and FDCPA. In *Baemmert v. Credit One Bank, N.A.*, 271 F. Supp. 3d 1043, 1049 (W.D. Wis. 2017), the court found that the continued calling of a consumer despite repeated do-not-call requests justified TCPA liability. That principle applies here. Plaintiff expressly told Defendant to stop calling, yet the calls persisted—often using rotating phone numbers, inconsistent names, and impersonal voicemail scripts.

23. Taken together, Defendant's behavior—including (1) refusal to identify itself; (2) refusal to validate the debt; (3) vague and scripted call content; and (4) the absence of any clear relationship with Plaintiff—supports the inference that these calls fall outside of the TCPA's exemption for lawful debt collection communications. Rather, they resemble commercial solicitations, masked to avoid regulatory scrutiny and intended to manipulate Plaintiff into engaging in a transaction under false pretenses.

## POINT III

## DEFENDANT IGNORED PLAINTIFF'S DO-NOT-CALL STATUS AND FAILED TO MAINTAIN ANY REQUIRED COMPLIANCE PROGRAM.

24. Plaintiff's phone number was registered on the National Do-Not-Call Registry as of February 4, 2023 (See Am. Compl., ECF No. 16 ¶ 14.). Between May and July 2023, Defendant placed at least twenty-nine unsolicited calls to Plaintiff's personal cell phone (See Am. Compl., ECF No. 16 Table 1.). These calls continued even after Plaintiff informed multiple representatives that they had reached the wrong person and that he was

not the intended recipient of the calls. Despite this, Defendant failed to cease contact and made no effort to investigate or update its records.

25. Plaintiff's phone number was registered on the National Do-Not-Call Registry as of February 4, 2023. Between May and July 2023, Defendant placed at least twenty-nine unsolicited calls to Plaintiff's personal cell phone. These calls continued even after Plaintiff informed multiple representatives that they had reached the wrong person and that he was not the intended recipient of the alleged debt. Despite this, Defendant failed to cease contact and made no effort to investigate or update its records:

   a. Failed to screen against the national DNC registry.

   b. Ignored Plaintiff's repeated oral requests not to be called;

   c. Persisted in calling a number clearly associated with a non-debtor;

   d. Failed to maintain or make available a written DNC policy;

   e. Continued contact in the absence of any preexisting relationship.

26. These allegations support a claim under 47 U.S.C. § 227(c)(5), which permits private actions for violations of the implementing regulations concerning DNC compliance. The DNC requirements apply to calls that constitute "telephone solicitations" — which, as alleged in the Complaint, includes Defendant's calls because Plaintiff was not the debtor and the calls were not exempt bona fide collection communications.

27. As emphasized in *Baemmert v. Credit One Bank, N.A.*, 271 F. Supp. 3d 1043, 1049 (W.D. Wis. 2017), where a defendant fails to maintain a proper DNC policy and continues calling after a consumer requests not to be contacted, courts have found that such conduct satisfies the pleading threshold under § 227(c). Here, Defendant went even further by continuing to call despite being affirmatively told that they had the wrong person — a

fact which, not only removes any potential exemption under the FDCPA or TCPA but also strongly evidences a reckless disregard for compliance.

28. The applicable regulations were designed to prevent precisely this type of invasive conduct: repeated and harassing calls made without regard to consent or relevance. Where a consumer tells the caller they are not the intended party and asks for the calls to stop — and the caller persists — courts have found that such conduct violates both the spirit and the letter of the TCPA.

29. Defendant's willful disregard of Plaintiff's repeated objections and clear statements that he was not the debtor only further underscores their failure to comply with industry-standard DNC safeguards. When viewed in the light most favorable to the Plaintiff, these facts more than plausibly support a claim under § 227(c).

## POINT IV

## DEFENDANT'S REFUSAL TO IDENTIFY ITSELF OR VALIDATE THE DEBT SUPPORTS MULTIPLE FDCPA VIOLATIONS.

30. The Amended Complaint alleges multiple violations of the Fair Debt Collection Practices Act ("FDCPA") arising from Defendant's refusal to disclose its identity as a debt collector, its continued communication with a non-debtor, and its failure to respond to a timely debt validation request. These allegations, taken as true, state a plausible claim for relief under 15 U.S.C. §§ 1692d, 1692e, and 1692g.

31. Under § 1692e(11), a debt collector must disclose in its initial communication that it is attempting to collect a debt and that any information obtained will be used for that purpose. In subsequent communications, the collector must disclose its identity as a debt

collector. Defendant failed to do either. When Plaintiff asked whether Defendant was a debt collector, representatives evaded the question, responding only that the calls concerned a "personal business matter." At no point did Defendant provide a Mini-Miranda disclosure or make any attempt to explain its role. Courts have held that such concealment violates § 1692e(11), especially when it deprives the consumer of the ability to understand or assert their rights. See, e.g., *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 669 (S.D.N.Y. 2006).

32. More critically, Plaintiff repeatedly informed Defendant's agents that he was not the person they were trying to reach (See Am. Compl., ECF No. 16 ¶ 18.). Despite this, Defendant continued to place calls — twenty-nine in total — over the course of several months. This pattern of conduct violates § 1692d, which prohibits conduct that harasses, oppresses, or abuses any person in connection with the collection of a debt. While debt collectors may place calls to reach a debtor, continuing to harass a third party after being told that person is not the debtor and has no connection to the alleged obligation is neither lawful nor excusable under the FDCPA. See *Dixon v. Brockway*, 2012 WL 3580086, at *5 (D. Utah Aug. 17, 2012) (continued collection efforts toward the wrong party may constitute a violation of § 1692d).

33. Further, on July 29, 2023, Plaintiff sent a certified letter disputing the alleged debt and requesting validation. Under § 1692g(b), Defendant was required to cease all collection activity until it provided verification of the debt. Defendant never responded. By continuing its collection activity without furnishing the required documentation, Defendant violated both § 1692g(b) and § 1692e(10), which prohibits deceptive means to collect or attempt to collect a debt.

34. This refusal to engage with Plaintiff in good faith — even after being notified that he was not the correct party and after receiving a formal dispute — suggests not only a breakdown in internal compliance procedures, but also a deliberate strategy to evade the statutory obligations of debt collectors under the FDCPA. Courts have recognized that failing to correct known errors and continuing to pursue non-debtors constitutes actionable misconduct. See *Valle v. First Nat'l Collection Bureau, Inc.*, 252 F. Supp. 3d 1332, 1336 (S.D. Fla. 2017).

35. These are not mere technical deficiencies. They are well-supported factual allegations of harassing conduct, deceptive practices, and noncompliance with basic statutory protections. Taken together, they state valid claims under the FDCPA that easily survive the threshold of plausibility at the Rule 12(b)(6) stage.

## CONCLUSION

For all the foregoing reasons Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss the First Amended Complaint in its entirety.

Steven J Frato Jr

April 7, 2025